# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:21-CV-00170-GCM *SEALED*

|  |  |
|---|---|
| **EQUITY INVESTMENT ASSOCIATES, LLC,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Respondent.** | **ORDER** |

   **THIS MATTER** comes before the Court upon the Petition to Quash Summons (ECF Doc. 2) filed by Petitioner Equity Investment Associates, LLC ("Equity") and the United States' Motion to Deny Petition and to Enforce Summons (ECF Doc. 18). Equity filed its response in opposition to the Government's motion (ECF Doc. 21), and the United States filed a reply (ECF Doc. 23). Equity also filed a Motion for Limited Discovery and an Evidentiary Hearing (ECF Doc. 22), the United States filed a response in opposition (ECF Doc. 24), and Equity filed a reply (ECF Doc. 25). These motions are now fully briefed. For the reasons stated herein, the Court finds that the Motion for Limited Discovery and Evidentiary Hearing should be denied and the United States' Motion to Deny Petition and to Enforce Summons should be granted.

## I.   BACKGROUND

   The Internal Revenue Service ("IRS") is conducting a civil audit examining a syndicated conservation easement ("SCE") where Equity donated a conservation easement to North American Land Trust ("NALT") that generated over $220 million in tax deductions for Equity's members. In the course of the ongoing audit, the IRS requested on three separate occasions that Equity produce its bank statements for BB&T bank—which is now known as Truist Bank ("Truist").

Equity did not produce bank records for Truist. On November 3, 2021, the IRS notified Equity vis-à-vis a Letter 3164-E that the IRS would issue summons as to Truist. Then, on March 30, 2021, the IRS served summons on Truist, requesting numerous bank records. The Petition to Quash pertains to this summons.

Other facts relevant to this proceeding stem from Equity's organization and management structure. Equity is managed by Southeast Property Acquisitions, LLC, which is managed by Inland Capital Management, LLC ("Inland Capital"), which is managed by Jack Fisher. AgeeFisherBarrett, LLC prepared the return for Equity for the relevant period. In December 2019, Inland Capital received a Grand Jury Subpoena to testify regarding documents and records relative to Jack Fisher, as well as business and financial transactions with Jack Fisher, Inland Capital, and any other entities relating to Fisher, including Equity. Also in December 2019, the IRS executed search warrants at the offices of Inland Capital and AgeeFisherBarrett, LLC to seize documents, records, and similar information related to entities managed by Fisher. Moreover, in December 2019, the Government entered into sealed plea agreements with Stein Agee and Corey Agee, principals of AgeeFisherBarrett, LLC. It has been publicly disclosed that these criminal proceedings pertain to a SCE tax fraud scheme.

Based on the foregoing, Equity maintains that the summons at issue here violated the relevant statute because: (1) there is a Department of Justice referral in effect; (2) the relevant information is already in the IRS's possession; (3) the summons was issued in bad faith; and (4) the IRS did not properly notify Equity prior to summonsing Truist. The Government disputes these arguments, contending that the affidavits it has submitted are enough to support that it adhered to all statutory requirements and the summons should be enforced. Any other relevant facts are set forth below.

## II. DISCUSSION

### A. Respondent's Motion to Deny Petition and Enforce Summons

The Internal Revenue Service ("IRS") is authorized "'to make the inquiries, determinations, and assessments of all taxes' the Internal Revenue Code imposes." *United States v. Clarke*, 573 U.S. 248, 249 (2014) (quoting 26 U.S.C. § 6201(a)). Summons may be issued "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability." 26 U.S.C. § 7602(a). The Secretary may:

> summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.

*Id.* The Secretary may also issue a summons to a third-party record keeper, so long as the Secretary adheres to the statutory procedural requirements. *See id.* § 7609. A summons "may not be used for improper purposes, 'such as to harass the taxpayer or to put pressure on him to settle a collateral dispute.'" *Alphin v. United States*, 809 F.2d 236, 238 (4th Cir. 1987) (quoting *United States v. Powell*, 379 U.S. 48, 58 (1965)).

Where "a taxpayer does not comply with a summons, the IRS may bring an enforcement action in district court." *Clarke*, 573 U.S. at 250. Similarly, a person receiving a summons, including a third party entitled to notice of summons, may file a petition to quash the summons. *See id.* at 253; 26 U.S.C. § 7609(b)(2). The same burden shifting framework outlined below exists for either an enforcement action or a petition to quash the summons.

For the Government to establish a prima facie showing that the summons is being used in good faith pursuant to the statutory purposes of allowing such summons, it must show: (1) "the investigation is being conducted for a legitimate purpose"; (2) "the inquiry is relevant to that purpose"; (3) "the information sought is not already in the possession of the IRS"; and (4) "the administrative steps required by the code have been followed." *Alphin*, 809 F.2d at 238. "The government's burden is fairly slight," and its prima facie case may be established by an affidavit of an agent involved in the investigation. *Id.* "Once the government has made its prima facie case, the burden shifts to the party challenging the summons to show that enforcement would be an abuse of the court's process." *Id.* "The party challenging the summons bears the heavy burden of disproving the actual existence of a valid civil tax determination or collection purpose." *Id.*

Here, the Government has established its prima facie case, and Equity has failed to meet its burden. First, the investigation is being conducted for a legitimate purpose. The IRS closely scrutinizes SCEs, such as the one underlying this matter, because of their ability to generate large tax deductions for individuals. I.R.S. Notice 2017-10 (designating SCEs as a "listed" transaction that must be specifically reported to the IRS). The return at issue reported a $223 million conservation easement donation deduction. This deduction will pass through to Equity's members, and this is why such transactions are closely scrutinized. The first *Powell* factor is easily satisfied. Moreover, Equity does not contest the legitimate purpose behind scrutinizing SCEs.

Second, the summonsed bank records are relevant. The plain text of the statute supports that the IRS may issue summons for the production of bank records, and bank records are an aspect of the taxpayer's return that are clearly relevant. *See* 26 U.S.C. § 7602 (a)(2); *see also La Mura v. Untied States*, 765 F.2d 974, 982 (11th Cir. 1985). Here, the summons requests savings and checking account records, loan records, credit card records, records of certified checks, money

orders, and other bank records, which would show payments between Equity and its members. As already noted, the Government may establish its prima facie case with an agent's affidavit, and Agent Skinner attests that such information would assist the IRS in understanding investments versus the size of the conservation easement deduction, which is relevant pursuant to these sorts of "listed" transactions. *See Alphin*, 809 F.2d at 238. Thus, the second *Powell* factor is also easily satisfied by the Government. Again, Equity does not contend that the records sought are irrelevant.

Third, an IRS agent associated with this investigation attests that the IRS does not already possess the information sought. Agent Skinner attests that the IRS does not possess the information sought. Even if the IRS had obtained some similar information from other sources, it is allowed to do so. *See Connor v. United States*, 434 F.3d 676, 681 (4th Cir. 2006) (explaining that the IRS may obtain similar information from other sources to compare the records for consistency); *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 350 (1st Cir. 2009) (same); *see also United States v. Clower*, 666 F. App'x 869, 875 (11th Cir. 2016) ("Some redundancy between the documents does not bar enforcement of an IRS summons."). The third *Powell* factor is satisfied. Equity's claim that the Government already possesses the information sought due to the criminal investigation of the Agees, Grand Jury Subpoena, and the search of Inland Capital's office is speculative and conclusory, and it has presented no other evidence to support its argument.

Fourth, an IRS agent associated with this investigation attests that the administrative steps required by the code have been followed. Petitioner concentrates its opposition to the Government's motion on this *Powell* factor, contending that there was a Justice Department referral in effect when the IRS issued the disputed summons. Summons may not be issued when there is a Justice Department referral in effect. 26 U.S.C. § 7602(d)(1). "A Justice Department

referral is in effect with respect to any person if" (1) "the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws" or (2) "any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person." *Id.* § 7602(d)(2)(A). Section 6103(h)(3)(B) notes that the form of request could be "a written request from the Attorney General, the Deputy Attorney General, or an Assistant Attorney General for a return of, or return information relating to, a person named in such request and setting forth the need for the disclosure." *Id.* § 6103(h)(3)(B). In relevant part, "return information" may include "the nature, source, or amount" of "income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments," as well as "any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary." *Id.* § 6103(b)(2)(A).

Here, the Government has met its burden by submitting an affidavit denying any referral is in effect as to Equity. *See Xelan, Inc. v. United States*, 361 F. Supp. 2d 459, 468 (D. Md. 2005) (accepting an IRS agent's declaration that no referral was in effect and acknowledging that, even though a grand jury subpoena sought records on behalf of accounts held by petitioner, petitioner still did not sufficiently support its argument that there was a referral in effect). Equity has not pointed to any authority requiring this Court to conclude that a referral was in effect simply because entities that manage Equity may have been referred. The plain text of the statute contradicts Equity's argument. *See* 26 U.S.C. § 7602 (discussing "persons" but not mentioning agents, members, or actions by agents or members); *see also id.* § 7701(a)(1) (explaining that "person" is "construed to mean and include an individual, a trust, estate, partnership, association, company or

corporation"); *but see id.* § 7343 (defining "person" in the criminal portion of the I.R.C. as "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."). Therefore, the Court concludes this argument lacks merit.

Equity has also argued that a referral was in effect because a request for return information was made as to its agents or as to Equity. This argument is premised on the contention that the Agee plea agreements contain return information that would cause a referral to be in effect if such information was requested from the IRS. *See id.* § 7602(d)(2)(A)(ii). This argument as to Equity's agents does not have merit for the reasons set forth above. And, as the Government points out, there are other means by which "return information" could have been acquired. Equity's argument is controverted by the Government's sworn affidavit, and it is completely speculative. As such, Equity has not produced any evidence, direct or circumstantial, that supports its claim that a referral is in place, and it has not satisfied its burden as to this aspect of the fourth *Powell* factor.

Equity also maintains that administrative requirements were not followed because the IRS did not give Equity proper notice of the summons. Petitioner's position that the notice was inadequate is based on caselaw from the Ninth Circuit, which uses a different standard to determine the adequacy of notice and is based on a prior version of the statute. *Compare* 26 U.S.C. § 7602(c)(1), *with J.B. v. United States*, 916 F.3d 1161, 1167 (9th Cir. 2019) (using language from a prior version of Section 7602 to decide what notice is reasonable). The notice requirement is met where the IRS agent sent a Letter 3164-E to Equity at least forty-five days but no more than one year prior to summonsing Truist. *See* 26 U.S.C. § 7602(c)(1); *see also Scharringhausen v. C.I.R.*, No. 24382–06, 2012 WL 6619014, at *7 (T.C. Dec. 19, 2012) (concluding that sending notices in the form of a Letter 3164 met the Section 7602(c) notice requirements). Equity argues

that notice was inadequate where the summons requested a broader range of documents than the IRS requested from Equity in its previous demand letters and where the IRS allegedly did not provide Equity with an opportunity to provide such documents itself. But Equity presents no binding authority that requires this Court to conclude the timely Letter 3164-E was insufficient to meet the code's administrative notice requirement. Equity has not satisfied its burden in challenging that the fourth *Powell* factor was satisfied in this regard.

Equity further argues that the summons was issued in bad faith and for an improper purpose because the Government has already publicly announced its position as to Equity's SCE deduction where it has openly proclaimed that the Agees participated in a fraudulent SCE tax scheme. According to Equity, to support the criminal prosecution of the Agees, the Government must disallow Equity's charitable contribution deduction, which means that the Government has already decided to deny Equity's deduction and, thus, has no need for the return information. Again, this argument is speculation which Agent Skinner has denied under oath. Equity has not met its heavy burden either to show that enforcing the summons would be an abuse of the court's process or to disprove the actual existence of a valid civil tax determination or collection purpose. Further, though Equity attempts to argue that it is entitled to limited discovery or an evidentiary hearing to meet this burden, the Court concludes it is not entitled to such, as set forth below.

### B. Petitioner's Motion for Limited Discovery and Evidentiary Hearing

Equity argues that if it failed to satisfy its heavy burden to overcome the Government's prima facie case, it at least presented evidence to support that it is entitled to limited discovery and an evidentiary hearing. The right to an evidentiary hearing or to limited discovery is not absolute, and the district court has broad discretion in deciding whether to grant a request for such. *Clark*, 573 U.S. at 255; *see also Hintze v. I.R.S.*, 879 F.2d 121, 126 (4th Cir. 1989), abrogated on other

grounds by, *Church of Scientology of Cal. v. United States*, 506 U.S. 9 (1992). If the taxpayer "can point to specific facts or circumstances plausibly raising an inference of bad faith," then the taxpayer is entitled to examine an IRS agent as part of the adversarial process. *Clarke*, 573 U.S. at 254. "Naked allegations of improper purpose are not enough." *Id.*; *see also Hintze*, 879 F.2d at 127–28 (affirming the district court's denial of an evidentiary hearing where petitioners "adduced no competent evidence whatsoever in support of their various claims of abuse" when they introduced only the affidavit of their attorney); *Hicks v. United States*, No. 1:02CV00284, 2003 WL 151854, at *2 (M.D.N.C. Jan. 17, 2003) ("In the absence of an affidavit by the petitioner, the government's uncontested allegations must be accepted as true by the court without an evidentiary hearing."). "If the challenging party cannot refute the government's prima facie case or cannot factually support a proper affirmative defense, 'the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing.'" *Alphin*, 809 F.2d at 238. Therefore, the Court here must ascertain whether Equity provided any facts or circumstances sufficient to support its claim that it is entitled to an evidentiary hearing.

Equity's contentions that it is entitled to an evidentiary hearing or to limited discovery are largely based on the same arguments set forth in its response to the Government's motion and in its petition. While it is true that Equity need not provide direct evidence to support its motion for an evidentiary hearing or for limited discovery, something more than pure speculation in an affidavit or declaration is needed to support such claim. *See Hintze*, 879 F.2d at 128 (noting that petitioners introduced an affidavit from their attorney which alleged that petitioners had been singled out in selective criminal prosecution, but the affidavit failed to meaningfully particularize facts supporting an inference of abuse). Each of Equity's contentions are either based on meritless legal arguments which the Court addressed above or on some occurrence that took place.

Regardless, Equity does not particularize facts in a manner that rises above speculation. For the reasons stated herein, the Court concludes that Equity is not entitled to limited discovery or an evidentiary hearing.

**III.  ORDER**

**IT IS THEREFORE ORDERED** that:

1. The United States' Motion to Deny Petition and to Enforce Summons (ECF Doc. 18) is **GRANTED**;

2. Equity's Motion for Limited Discovery and an Evidentiary Hearing (ECF Doc. 22) is **DENIED**;

3. Equity's Petition to Quash Summons (ECF Doc. 2) is **DENIED**; and

4. The Clerk of Court is hereby respectfully directed to close this case.

**SO ORDERED**.

Signed: August 13, 2021

Graham C. Mullen
United States District Judge